BERNARD MCNENY, APPELLEE, v. AMBROSE S. CAMPBELL ET AL., APPELLANTS.[*]

FILED MAY 21, 1908. No. 15,190.

1. **Principal and Agent:** LIABILITY OF AGENT. Where an agent negotiates a sale of real estate for the broker with whom the purchaser makes a contract, he is not for that reason liable jointly with the vendor for a return of the purchase price paid, in a case where the vendor fails to make the conveyance.

2. **Vendor and Purchaser:** RESCISSION. Where one is so situated with reference to a tract of land that he can acquire the title thereto either by the voluntary act of the parties holding the title or by proceedings at law or in equity, he is in a position to make a valid agreement for the sale thereof; and, where he does make such agreement, the fact that the purchaser understood him to be possessed of the legal title does not constitute a ground for rescission of the contract, especially where it appears that such purchaser did not rely upon the existence of the legal title in the vendor.

3. **Process.** To authorize summons to another county in a merely personal action for money, there must be an actual right to join the resident and nonresident defendants.

APPEAL from the district court for Webster county: ED L. ADAMS, JUDGE. *Reversed with directions.*

*P. W. Scott, C. W. Meeker* and *L. H. Blackledge,* for appellants.

*E. U. Overman* and *Bernard McNeny, contra.*

CALKINS, C.

The defendants Burke and Campbell were real estate dealers and brokers at Imperial, in Chase county. The

[*] Rehearing denied. See opinion, p. 761, *post.*

defendant Carpenter, who resided in Red Cloud, in Webster county, was engaged in the business of selling lands in Chase county, soliciting purchasers in the locality of his residence and accompanying them to the western part of the state, sometimes cooperating with the local agents. He was not a member of the firm of Burke & Campbell, but had received commissions from them in cases where he had found buyers for lands which they owned or had for sale as brokers. In September, 1906, he accompanied one Joshua Rushton from Red Cloud to Chase county and introduced him to the defendants Burke & Campbell, who, with his assistance, made a sale to Rushton of certain Chase county land upon contract, for the price of $4,800, $450 of which was paid cash in hand. On this sale Carpenter was paid a commission by Burke & Campbell. An abstract of title to the land was prepared, to which Rushton made objection; and such negotiations were had between the parties that this contract was canceled; and on the 11th day of October Burke & Campbell, with the assistance of Carpenter, contracted with Rushton to sell him another tract of land for the price of $4,000, of which $1,450 was paid in cash, and the remainder was to be paid on or before January 20, 1907. The cash payment was made up of the $450 paid by Rushton on the first contract and $1,000 for which he gave his check. At the time of the making of the second contract the legal title to the land therein described was in the name of Lyman Pritchard, a resident of Iowa, who had executed a lease of this and other lands, with an option of the lessee to purchase during the term at a price therein named, and this right had been assigned to and was held by Burke & Campbell.

Prior to January 20, 1907, Burke & Campbell, at the request of Rushton's attorney, sent to him an abstract, which showed the title to the land in Pritchard, subject to a mortgage of $1,100. At or before this time Burke & Campbell had taken steps to avail themselves of the option to purchase contained in the lease, and to secure the

satisfaction of the mortgage and the making of a deed
from Pritchard to Rushton. Rushton's attorney had
written Burke & Campbell to postpone the date for the
final closing of the transaction to January 23; but on
January 17 Rushton, having become dissatisfied because,
as he claims, the title appeared to be in Pritchard, instead
of Burke & Campbell, decided to sell the contract for
what he could get, and disposed of the same to the plain-
tiff for $50. The plaintiff immediately went to Imperial,
and on the 21st day of January, 1907, tendered to Burke
& Campbell the remainder of the payment and demanded
from them the deed. This they were unable to furnish at
that time, but they informed the plaintiff that they were
expecting the arrival of the deed, and that they had re-
ceived a letter from Mr. Rushton's attorney asking them
to postpone the date of final payment until the 23d. The
plaintiff remained in Imperial until the 23d, at which time
he demanded repayment of the $1,450 paid by Rushton,
but he does not appear to have again tendered the re-
mainder of the purchase price. On the 24th of January
Burke & Campbell received from Pritchard the satisfac-
tion of the mortgage and the deed to Rushton, which they
offered to deliver upon payment of the purchase price.
On January 30 the plaintiff filed his petition in this case
in the district court for Webster county, joining Burke &
Campbell with the defendant Carpenter. Summons was
served upon Carpenter in Webster county, and a sum-
mons directed to the sheriff of Chase county was there
served upon the defendants Burke & Campbell. The
petition followed the form of the common law count
in assumpsit for money had and received. It charged
that the defendants became indebted to one Joshua
Rushton in the sum of $1,450 for so much money
received from said Rushton on or about the 11th day of
October, 1906, to and for the use of said Rushton, and
alleged that Rushton had assigned his cause of action to
the plaintiff, who had demanded and had been refused
payment of the said sum. The answer of Carpenter was

a general denial. The answer of Burke & Campbell challenged the jurisdiction of the court, and set up the fact that the $1,450 was received as payment upon the contract for the sale of the land, which they were ready to perform, and denied the other allegations of the petition. To this answer the plaintiff filed a reply, setting up that the defendants obtained the said contract by making false representations as to the ownership and value of the land; that he had, on the 22d day of January, 1907, rescinded the contract on account of such fraud, and because the defendants were unable to deliver title as agreed; and that he had demanded a return of the $1,450. A jury was waived, and the cause tried to the court, who found for the plaintiff. From a judgment upon this finding, the defendant Carpenter and Burke & Campbell severally appeal.

1. The defendants insist that the petition did not state a cause of action; that Carpenter was improperly joined, and that the district court for Webster county therefore obtained no jurisdiction over the defendants Burke & Campbell; and, finally, that the evidence failed to show either fraud or any state of facts which entitled the plaintiff to rescind the contract and recover the money already paid thereon.

Assuming that the failure of the defendants Burke & Campbell to convey this land by a good and sufficient warranty deed at the time such conveyance was demanded of them by the plaintiff entitled the plaintiff to recover the amount paid by his assignor on the contract, it is clear that such action existed only against the defendants Burke & Campbell. They had received the money and made the contract to convey, and the fact that the defendant Carpenter had acted for them as an agent in securing the purchaser or making the sale, and had received compensation therefor, would not make him liable for a return of the money on account of Burke & Campbell's failure to make the title good. That was their liability alone.

2. If Burke & Campbell confederated with Carpenter,

and they together made false representations material to the contract, and thereby secured the money of plaintiff's assignor, they would be liable to the plaintiff jointly and erally. We therefore proceed to examine the question to whether any fraud which would entitle the plaintiff's assignor to avoid the contract is shown by the evidence to have been practiced upon him. In the reply of the plaintiff this fraud is alleged to have been perpetrated by false statements, first, as to the value of the land; and, second, as to the ownership of the same. With reference to the first question there is absolutely no evidence in the record to show that the land was worth less than it was represented to be. Rushton himself saw and examined the land, and in such a case evidence as to false statements of value, which are always largely a matter of opinion, must be very clear in order to avoid the contract.

Upon the question of false representations as to the ownership of the land, it is admitted that the legal title was in Pritchard; that Pritchard had given a lease with an option to the lessee to purchase; and that this lease and right of purchase was held by Burke & Campbell at the time of making the contract. It is conceded that it was valid and enforceable. When one is so situated with reference to a tract of land that he can acquire the title thereto either by the voluntary act of the parties holding the title or by proceedings at law or in equity, he is in a position to make a valid agreement for the sale thereof. *Easton v. Montgomery*, 90 Cal. 307; *Townshend v. Goodfellow*, 40 Minn. 312; *Dresel v. Jordan*, 104 Mass. 407. The contract made by the defendants Burke & Campbell provides that they shall transfer by warranty deed, together with abstract posted to date showing clear title to the land in question. The claim that the defendants represented that the title was in Burke & Campbell is based upon the testimony of Rushton, who states that Carpenter, on the way to Imperial, told him the land was absolutely clear and belonged to Burke & Campbell.

His testimony as to what occurred at the time of the making of the contract is as follows: "Q. Who was there when the contract was drawn up? A. Mr. Carpenter, Mr. Campbell and myself. Q. Now, was there anything said at that time by either Mr. Carpenter or Mr. Campbell about the title to the land? A. Yes, sir. Q. What was said? A. They said they owned the land. The parties that sold it to me. That was my understanding. Burke & Campbell owned the land. Q. That they had the title to the land? A. That was my understanding." The situation was, as we have seen, that Burke & Campbell were making this contract on their own behalf, and not as brokers for some other owner, and that, while they did not have the legal title for it, they did have a valid and enforceable contract by which they could acquire such title. The testimony of Rushton does not attempt to give the language of the defendants, and amounts to no more than that he understood the title to be in Burke & Campbell. One of the essential elements of fraud practiced by means of false representations is that the representation, must be concerning a matter material to the contract. Had the purchaser taken steps to have the contract acknowledged and recorded, he would have shown by such conduct a reliance upon the fact of the title being in Burke & Campbell, which does not appear from what he actually did. By not taking steps to give notice of his rights in the land by registering his contract, he relied upon the personal undertaking of Burke & Campbell. Had the legal title been in them at the time of the execution of the contract, he would have obtained no greater assurance for its performance than he had as it actually was, and he was not, therefore, injured by the fact that the legal title was not in his vendors at that time. The alleged misrepresentation not being concerning a matter material to the contract, nor calculated to injure the plaintiff, does not constitute such fraud or deceit as would entitle the plaintiff to a rescission of the contract on that ground. *Sonnesyn v. Akin,* 14 N.

Dak. 248, and cases there cited; *Provident Loan Trust Co. v. McIntosh*, 68 Kan. 452.

3. The plaintiff having failed to show that the defendants confederating together obtained the money of the plaintiff's assignor by fraudulent representations, he has failed to establish a joint cause of action against the defendant Carpenter and the defendants Burke & Campbell. We may admit the sufficiency of the petition, the right of the plaintiff to rescind the contract and recover back the purchase price for the failure of Burke & Campbell to convey, and yet this constitutes no cause of action against the defendant Carpenter. The action, being personal and for the recovery of money only, does not fall within any exception to the general rule formulated in section 60 of the code, which requires actions to be brought in the county in which the defendant or some one of the defendants resides or may be summoned. To authorize summons to another county in personal actions for the recovery of money only, there must be an actual right to join the resident and nonresident defendants; and the right to maintain an action of that character against a nonresident served in another county depends upon the plaintiff's really having a right to recover from the resident defendants jointly with the others. *Stull Bros. v. Powell*, 70 Neb. 152; *McKibbin v. Day*, 71 Neb. 280; *Penney v. Bryant*, 70 Neb. 127. The plaintiff in this case having shown no right of action against Carpenter, the district court for Webster county obtained no jurisdiction of the defendants Burke & Campbell, and the action should have been dismissed.

We therefore recommend that the judgment of the district court be reversed and the cause remanded, with instructions to dismiss plaintiff's petition as to the defendant Carpenter absolutely, and as against Burke and Campbell without prejudice to future action.

FAWCETT and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded, with instructions to dismiss plaintiff's petition as to the defendant Carpenter absolutely, and as against Burke and Campbell without prejudice to future action.

REVERSED.

The following opinion on motion for rehearing was filed October 8, 1908. *Rehearing denied:*

PER CURIAM.

In the motion for a rehearing, exception is taken to so much of our opinion as dismisses the action, and we are inclined to the belief that this exception is well taken. Our judgment is therefore modified to read, "and the cause is remanded to the district court for further proceedings."

MOTION OVERRULED.