MARIE THORIN, APPELLANT AND CROSS-APPELLEE, V. EUGENE W. KURKOWSKI, APPELLEE AND CROSS-APPELLANT.
224 N. W. 2d 173
Filed December 12, 1974. No. 39491.

Albert W. Crites, of Crites, Shaffer & Slavik, for appellant.

Thomas M. Shanahan of McGinley, Lane, Mueller, Shanahan & McQuillan, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BOSLAUGH, J.

This is an action for an accounting following the dissolution of a partnership composed of Eugene W. Kurkowski and Clarence Thorin. The plaintiff, Marie Thorin, is the widow and sole beneficiary of Clarence Thorin, who is deceased. The estate of Clarence Thorin has been administered and all his property has been distributed to the plaintiff. The defendant, Eugene W. Kurkowski, is the surviving partner.

The trial court found the partnership was dissolved as of September 6, 1964, the date on which Clarence

Thorin died; that on that date, the value of the interest of Thorin in the partnership was $2,352.89; and that in addition to the value of his interest in the partnership, the plaintiff should recover $5,923.30 as "profits attributable to the use of her right in the property of the dissolved partnership" as provided in section 67-342, R. R. S. 1943.

The plaintiff has appealed and contends the trial court erred in determining the value of the interest of Thorin in the partnership and the amount of profits the plaintiff should recover. The defendant has cross-appealed and contends the trial court should have found Thorin had no interest in the partnership at the time of his death and no right to recover any profits after the dissolution.

The partnership was known as the "Kurkowski and Thorin Agency." The partnership agreement provided the partnership would operate a general insurance agency, a real estate brokerage business, and "any and all types of business and enterprises as may be unanimously agreed upon by the partners."

The defendant and Thorin entered into several business ventures or operations in addition to the sale of insurance and real estate. One of the major ventures was a feed mill. A central issue in the case is whether it was an activity of the partnership. The trial court held it was not a venture of the partnership.

In 1962, "Eugene W. Kurkowski and Clarence Thorin, a partnership" executed an equipment lease and a franchise agreement with Nutrena Mills, Inc. The lease provided Nutrena would construct bins and related buildings and install machinery for the operation of a feed mill by the lessee. The franchise agreement authorized the lessee to operate a Nutrena Customatic Service Center upon the leased property in accordance with the terms of the franchise agreement.

On the day the lease was signed, advance rental in

the amount of $3,300 was paid to Nutrena Mills by a check drawn on the agency account. The defendant testified he and Thorin intended the feed mill to provide investment income as a part of the agency.

The feed mill was constructed for Nutrena by Jones Construction Company. There was additional work done on the mill by Jones Construction Company pursuant to a contract with the lessee. This construction was financed in part by a promissory note in the amount of $7,671.01 signed by Thorin and the defendant and their wives. There are canceled checks in the record drawn on the agency account showing payments to the Jones Construction Company of $729.41 on August 16, 1962, $400 on October 6, 1962, and $3,070.78 on June 17, 1963. The October 6, 1962, check was signed by Thorin. The note to Jones Construction Company was eventually paid by the defendant out of personal funds in the amount of $8,135.11.

On April 24, 1964, a complaint was filed in federal District Court against Thorin and the defendant alleging they had failed to make the rental payments due under the lease and that Cargill, Inc., as successor to Nutrena Mills, Inc., had taken possession of the property on or about June 30, 1963. The action was dismissed with prejudice on October 23, 1967, upon the stipulation of the parties. The defendant paid $2,000 in attorneys' fees out of his own funds to defend the action for which he was not reimbursed.

We think the record sustains a finding that Thorin and defendant intended the feed mill to be a venture of the partnership and at least $10,135.11 of the amounts attributable to the feed mill should be accounted for as transactions of the partnership. The effect of this holding is to charge an additional $5,067.55 against the interest of Thorin in the partnership.

Other issues relate to the valuation of good will, a transaction known as the Curtis property, accounts re-

ceivable, advances to the partnership by the defendant, and proceeds from an insurance policy upon the life of Thorin.

The defendant valued good will at $1 in his accounting and the trial court confirmed this figure. The plaintiff contends a value should have been fixed upon the basis of commissions earned from the sale of real estate and insurance by the partnership.

Generally, in the absence of an agreement to the contrary, upon the dissolution of a partnership firm by the death of one of its members, the surviving partners may carry on the same line of business at the same place without liability to account for the good will of the firm. Johnson v. Munsell, 170 Neb. 749, 104 N. W. 2d 314. The partnership agreement contained provisions regarding the valuation of the assets of the partnership including good will, but the record indicates these provisions were not followed and no effort was made to dispose of interest of the deceased partner in accordance with these terms of the agreement.

The method of valuation urged by the plaintiff is appropriate to the sale of a going business where the vendor is not going to continue in the same business in the same locality. It is clear from the record that such a method is not applicable if the surviving partner intends to continue in business. As stated in Spalding v. Spalding's Administrator, 248 Ky. 259, 58 S. W. 2d 356: "When a member of a partnership conducting an insurance agency dies, the surviving partner is not required to retire from the insurance business in order that the good will of the firm may be sold." Since the defendant had the right to continue in the insurance business, the good will had but a nominal value.

The Curtis property is a residence in Grant, Nebraska. In 1961, the defendant made a loan from personal funds to Donald L. Curtis. Curtis was unable to pay this indebtedness so in 1963 he conveyed his

residence property to the defendant in return for credit on the note. At the time of the conveyance there was a balance of $5,750 due on a mortgage to the Tecumseh Building and Loan Association. Curtis and the defendant agreed the property had a value of $8,000 so Curtis received a credit of $2,250 on his indebtedness to the defendant which was then $4,741.34. The testimony of Curtis supports this version of the transaction.

The conveyance was to both Thorin and the defendant and, apparently, a new mortgage to the Tecumseh Building and Loan Association was executed by Thorin and the defendant and their wives. Thorin had furnished no part of the consideration for the conveyance and had no interest in the property. At the time of his death the balance due on the mortgage had been reduced to $5,421.03. At the most, Thorin might have been entitled to a credit of $164.48.

The trial court found Thorin had no interest in the Curtis property and ordered the plaintiff to convey the property to the defendant. This was proper because the court had jurisdiction to settle all rights between the parties arising out of the partnership. See, 68 C. J. S., Partnership, § 411 b, p. 934; Danico v. Ford, 230 Iowa 1237, 300 N. W. 547. The plaintiff's claim to some interest in the property was a matter which could be determined in the action.

With regard to the accounts receivable, the controversy concerns an account in the amount of $386.96 which the plaintiff claims was omitted. The testimony of the bookkeeper indicated this account had been included in the corrected total of accounts receivable. Although the evidence concerning the business records and books of the partnership left much to be desired, the record sustains the finding against the plaintiff on this item.

The defendant claimed he had advanced funds to the partnership from time to time and there was a

balance of $4,200 due him because of these advances. The defendant produced canceled checks drawn on his personal account which supported his testimony in this regard. We think the record sustains the finding by the trial court in favor of the defendant on this issue.

The proceeds from the insurance policy upon the life of Thorin was clearly an asset of the partnership. There appears to be no dispute concerning this matter at this time and the finding of the trial court was correct.

As we view the record, Thorin was indebted to the partnership and had no interest in the partnership at the time of his death. The amount due the defendant as a result of the feed mill venture exceeds the balance due Thorin as found by the trial court. This finding makes it unnecessary to consider the contentions of the parties in regard to profits after dissolution.

In the cross-appeal the defendant contends he should have recovered judgment on his counterclaim. The counterclaim alleged Thorin was indebted to the partnership at the time of his death and the defendant sought judgment against the plaintiff for this amount. Any indebtedness of Thorin to the partnership would not be a liability of the plaintiff. The finding against the defendant on the counterclaim was correct.

The judgment of the District Court is affirmed in part, and in part reversed and the cause remanded for entry of judgment in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.